602 So.2d 510 (1992)
In re INQUIRY CONCERNING a Judge re Richard J. FOWLER.
No. 77929.
Supreme Court of Florida.
February 20, 1992.
Order Denying Motion to Extend Time to File Rehearing July 23, 1992.
J. Klein Wigginton, Chairman and Roy T. Rhodes, Gen. Counsel, Florida Judicial Qualifications Com'n, Tallahassee, and Mark Hulsey and E. Lanny Russell, Sp. Counsel for the Florida Judicial Qualifications Com'n, of Smith & Hulsey, Jacksonville, for petitioner.
Alan C. Sundberg of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for respondent.
PER CURIAM.
This proceeding is before the Court for review and disposition of a recommended action of the Judicial Qualifications Commission (JQC). We have jurisdiction under article V, section 12 of the Florida Constitution.
Richard J. Fowler is the Chief Judge of the Sixteenth Judicial Circuit. At approximately 3 a.m. on December 20, 1990, Judge Fowler accidentally backed into a parked car as he was leaving the home of friends in Key West to drive his ill companion home. The judge did not stop to determine the damage to the vehicle or the identity of its owner, but proceeded directly home.
Police officers arrived at the scene of the accident and proceeded to Judge Fowler's home after a witness identified his car. When questioned about the accident, Fowler told the officers that he was aware of the accident and that he was sorry it had happened. He then stated that a woman was the driver of the vehicle and that he was a passenger. He repeated this statement several times. When the police asked to speak to the woman, Fowler told them that "would not be possible." Fowler and the owner of the damaged vehicle agreed to work out a settlement between themselves, and Fowler has since fully compensated the owner for the damages to his car.
On December 21 a reporter from the Miami Herald called Judge Fowler to inquire about the accident. He told Fowler that an accident report had been prepared and that the report indicated that Fowler said he was a passenger in the car, not the driver. Fowler told the reporter that he was sorry the police had gotten the impression that he was not the driver of the car. Fowler contacted his attorney that evening and asked him to make arrangements to correct the statements that he had made to the police. At the request of the police, the judge subsequently prepared a written statement explaining the circumstances surrounding the accident and correcting the false information he had given them.
Judge Fowler pled guilty to furnishing false information about an accident to a police officer. He agreed to pay the maximum fine for the offense and to perform thirty hours of community service. Adjudication of guilt was withheld. He promptly paid his fine and has fully completed the community service. Judge Fowler was also charged with improper backing, leaving the scene of an accident, and failure to *511 immediately report an accident, and he paid fines for these traffic infractions.
After a hearing, the JQC found as follows:
The Commission finds, by unanimous vote, that Judge Fowler's conduct as set forth in the Notice of Formal Charges, and established at the hearing by the requisite standard of clear and convincing evidence, is conduct unbecoming a member of the judiciary, and that Judge Fowler is guilty of violating Canons 1 and 2 [of the Florida Code of Judicial Conduct].
Judge Fowler did not uphold the dignity and integrity of the judiciary. He did not establish, maintain, enforce and observe the high standards of conduct required of members of the judiciary so that the integrity of the judiciary may be preserved. Lying is a very serious offense. As this Court has said, "[t]he integrity of the judicial system, the faith and confidence of the people in the judicial process, and the faith of the people in the particular judge are all affected by the false statements of a judge." In re Inquiry Concerning a Judge, Leon, 440 So.2d 1267 [(Fla. 1983)].
We recognize the rule set by this Court that "in determining whether a judge has conducted himself in a manner which erodes public confidence in the judiciary, we must consider the act or wrong itself and not the resulting adverse publicity." In re Lamotte, 341 So.2d 513, 518 (Fla. 1977). Judge Fowler's conduct was clearly improper and eroded public confidence and trust in his integrity and the integrity of the judiciary. Judge Fowler failed to regulate his extra-judicial activities in a proper manner and those activities greatly detracted from the dignity of his office. On the other hand, the evidence at the hearing established that prior to this isolated incident, Judge Fowler was a well-respected jurist. Testimony from a variety of lawyers, judges, and citizens clearly attested to this fact.
The Commission concludes that while the public's confidence in the judicial system has been eroded by Judge Fowler's conduct, such erosion has been minimized by his prior exemplary and otherwise unblemished record on the bench and in community service.
Judge Fowler stipulated that his actions in connection with the automobile accident constitute conduct unbecoming a member of the judiciary. We agree. He does not contest the JQC's findings or its recommendation of a public reprimand. Accordingly, we adopt the JQC's findings and hereby impose a public reprimand on Judge Fowler for improper conduct by a judicial officer.[*]
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.

ON MOTION FOR EXTENSION OF TIME TO FILE FOR REHEARING
The motion for extension of time to file a petition for rehearing on behalf of the Judicial Qualifications Commission is hereby denied.
BARKETT, C.J., and SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., dissents with an opinion, in which McDONALD, J., concurs.
OVERTON, J., dissenting.
I would grant the Judicial Qualifications Commission's motion for an extension of time to file a petition for rehearing to reconsider the footnote at the end of our opinion, which states:
We do not address the question of whether Judge Fowler's conduct warrants more severe discipline. Our constitutional prerogative is limited to approving or reducing the disciplinary recommendations of the JQC. Art. V, § 12(f), Fla. Const.
*512 Page 511 n. [*]. The question of whether we have the authority to increase judicial discipline in this or any other judicial disciplinary proceeding was neither argued nor briefed by the parties. The Judicial Qualifications Commission has asked that it be allowed to brief and argue this issue. Because we, rather than the parties, raised this issue and made a substantive holding that can have broad ramifications beyond our decision in this case, we should allow the parties and all other interested persons an opportunity to be heard on this issue.
McDONALD, J., concurs.
NOTES
[*] We do not address the question of whether Judge Fowler's conduct warrants more severe discipline. Our constitutional prerogative is limited to approving or reducing the disciplinary recommendations of the JQC. Art. V, § 12(f), Fla. Const.