THOMAS, J.
Appellant appeals her adjudication of delinquency for giving a false name or identification to a law enforcement officer, asserting two grounds for reversal of the trial court’s ruling denying her motion to dismiss. Appellant asserts that the State provided insufficient evidence of identity, and that she established the affirmative defense of recantation. We affirm on both grounds.

Facts and Procedural History

Officer Petroczky with the Tallahassee Police Department made a traffic stop after witnesses said that the occupants of the vehicle were throwing eggs at pedestrians, some of whom were struck. After stopping the car, the officer saw a half-empty carton of eggs at Appellant’s feet. Appellant identified herself to the officer as Victoria Herring with a birth date of June 12, 1989. The officer ran the information through the criminal justice information network, discovered an outstanding warrant for Victoria Herring, and arrested Appellant. He began to take Appellant to the county jail, but after driving two or three blocks, Appellant told the officer she had given him false information and provided her true name and date of birth. Officer Petroczky then realized that Appellant was a juvenile, and he contacted the Juvenile Assessment Center to verify her information. The Juvenile Assessment Center informed the officer that Appellant had a pickup order.
Appellant was charged with giving a false name or identification to a law enforcement officer, in violation of section 901.36(1), Florida Statutes (2007). At the hearing, the State was required to prove that Appellant had been lawfully arrested or detained by a law enforcement officer and gave a false name or otherwise falsely identified herself to a law enforcement officer. See § 901.36(1), Fla. Stat. (2007).
Officer Petroczky was the sole witness at Appellant’s adjudicatory hearing. When asked to identify Appellant, the officer testified, “I could not tell you that that was the female that I — I could not positively confidently tell you that that was the female that I ... had contact with that night. But she does look familiar.” The State then asked, “On a scale from one to ten, what do you think she is?” The officer replied, “I would say at least a nine.” *707 The officer then pointed out Appellant and described her clothing.
During cross examination, Appellant’s counsel asked the officer, “And you just testified that you are pretty sure, but you are not totally sure that this was [Appellant] in the courtroom today?” The officer answered, ‘Yes. Again, I had contact with thousands of people since then.” No other evidence was presented regarding identity.
The defense moved for a judgment of dismissal on the grounds that the identification of Appellant was inadequate, and because even if sufficiently identified, Appellant had recanted her false statements to the police officer.

Analysis

Sufficiency of the Evidence to Establish Identity

In reviewing a motion for judgment of dismissal in a juvenile case, appellate courts apply the de novo standard of review, as applied to motions for judgment of acquittal in criminal cases. See A.P.R. v. State, 894 So.2d 282 (Fla. 5th DCA 2005). If the State has presented competent evidence to establish every element of the charged crime, then a judgment of acquittal is improper. State v. Williams, 742 So.2d 509, 511 (Fla. 1st DCA 1999). Where a defendant moves for a judgment of acquittal, she admits all facts adduced and every reasonable inference drawn from those facts. Lynch v. State, 293 So.2d 44, 45 (Fla.1974). Furthermore, appellate courts are not at liberty to evaluate the weight of the evidence, but only its legal sufficiency. Tibbs v. State, 397 So.2d 1120 (Fla.1981). Rather, our task is to determine whether, after reviewing all of the evidence in the light most favorable to the State, we find that a rational factfinder could find that each element of the offense exists beyond a reasonable doubt. Fitzpatrick v. State, 900 So.2d 495, 507 (Fla. 2005); Banks v. State, 732 So.2d 1065 (Fla.1999).
We find that the evidence viewed in the light most favorable to the State is sufficient to uphold Appellant’s adjudication. See C.C., Jr. v. State, 943 So.2d 905 (Fla. 5th DCA 2006) (holding that a victim’s out-of-court identification was sufficient to support adjudication). The arresting officer’s testimony that Appellant “looked familiar” and his identification of her as “at least a nine” on a scale of one to ten, along with the exchange during cross-examination, provided legally sufficient evidence that Appellant is the person whom the officer arrested. See Fowler v. State, 987 So.2d 111 (Fla. 1st DCA 2008); C.C., Jr., 943 So.2d at 905. The fact that the officer honestly acknowledged his limited recollection of Appellant’s identity does not provide a legal basis to reverse the adjudication here.
Utilizing our proper standard of review of the denial of the motion to dismiss, we affirm. Such a holding is consistent with prior decisions and encourages candor in our courts.

The Affirmative Defense of Recantation

 Courts have previously held that the common law defense of recantation applies in a prosecution for providing a false name or identification to a law enforcement officer, although the statute does not recognize the defense. See § 901.36(1), Fla. Stat. (2007); A.A.R. v. State, 926 So.2d 463 (Fla. 4th DCA 2006). The rationale is based on policy reasons cited in cases finding the defense applicable to prosecutions of the similar statutes addressing false statements, including obstruction of justice, opposing a law enforcement officer without violence, and perjury. See A.A.R. v. State, 926 So.2d at 464-66; L.J. v. State, 971 So.2d 942 (Fla. 3d DCA 2007); C.T. v. State, 481 So.2d 9 (Fla. 1st DCA 1985); P.P. v. State, 466 *708 So.2d 1140 (Fla. 3d DCA 1985). The primary policy reason to recognize the recantation defense is compelling: the defense encourages people to recant false information and tell the truth to law enforcement authorities without fear of prosecution. Thus, like our sister courts in the Third and Fourth Districts, we hold that the common law defense of recantation applies to prosecutions for giving a false name to law enforcement officers in violation of section 901.36(1), Florida Statutes (2007). We find the defense does not apply here, however, because Appellant did not recant the false information until after her arrest.
In A.A.R., the Fourth District reversed the adjudication, finding that the affirmative defense of recantation applied because no serious harm was done before the recantation. 926 So.2d at 463. There, the offender provided his true name and birth date before arrest, transport, or booking, and no reports were prepared or action taken in reliance on the false information. Id.
By contrast, in L.J., the Third District recognized the validity of the recantation defense in false name prosecutions, but held that the defense did not apply because the juvenile did not recant until after he was in custody and was being transported to the police station. The Third District relied on the reasoning in Fripp v. State, 766 So.2d 252 (Fla. 4th DCA 2000), and State v. Townsend, 585 So.2d 495 (Fla. 5th DCA 1991), that once a defendant is arrested, the policy reasons that excuse providing false information are no longer applicable. L.J., 971 So.2d at 944. We agree.
As noted in A.A.R., whether the recantation occurred before or after the arrest is often the critical factor in evaluating the recantation defense. See A.A.R., 926 So.2d at 467; L.J., 971 So.2d at 944; Fripp, 766 So.2d at 254 (affirming conviction for obstruction of justice where recantation of false information occurred after appellant’s arrest and transport); In the Interest of J.H., 559 So.2d 702, 703 (Fla. 4th DCA 1990) (affirming conviction for resisting arrest without violence by giving a false name, where recantation of false information occurred after arrest); but see Steele v. State, 537 So.2d 711 (Fla. 5th DCA 1989) (reversing conviction for resisting an officer without violence despite the fact that recantation was made after arrest).
Appellant argues that the recantation defense applies because she recanted her false information within three blocks of where the officer initiated her transport to the county jail. She alleges there was no harm to the officer in providing this false information because the juvenile detention center is “basically in the same place” as the county jail. Appellant further asserts that she would have been arrested regardless of whether she provided false information in light of her pickup order, thus negating any adverse reliance on the false information.
We hold the time of recantation in relation to the time of arrest is the essential factor in determining whether the affirmative defense of recantation applies to a prosecution under section 901.36(1). We find this case more analogous to L.J. in that Appellant was in custody and in transport to the county jail when she recanted her false information and provided the officer with her true identity. The trial court, therefore, properly denied Appellant’s motion for judgment of dismissal.
We reject Appellant’s argument that no harm resulted from providing false information because she would have been detained on the basis of her pickup order. Appellant’s actions forced the officer into making what he thought was a necessary *709 arrest. Had Appellant provided truthful information, the officer could have promptly determined that Appellant was a juvenile and responded accordingly. Law enforcement officers perform a dangerous and difficult duty. We will not assume that there is no harm in causing a law enforcement officer to proceed on false information and arrest someone who assumes a false identity.
We AFFIRM Appellant’s adjudication and sentence for providing a false name to a law enforcement officer.
WEBSTER and VAN NORTWICK, JJ„ concur.